## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CAMERON L. ATKINSON,** | **Case No. 3:19-CV-01785-VLB** |
| **Plaintiff,** | |
| **v.** | |
| **FACEBOOK, INC., MARK ZUCKERBERG,** | |
| **Defendants.** | **JANUARY 21, 2020** |

## <u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

## I.      INTRODUCTION

Plaintiff Cameron L. Atkinson, a third-year law student at Quinnipiac University, is suing Facebook, Inc. and its founder and CEO Mark Zuckerberg for "a sum significantly in excess" of $5 billion.  The alleged wrong-doing to command such a staggering figure?  Facebook's decision to remove Mr. Atkinson's posts that mentioned the purported name of the anonymous whistleblower whose complaint to the Intelligence Community Inspector General triggered the on-going Congressional impeachment proceedings.

The federal Inspector General Act, 5 U.S.C. App. 3, § 7(b) protects the whistleblower's identity from disclosure, and Facebook is not alone in its decision to redact his or her name.  Most major media outlets—including *The Wall Street Journal*, *The New York Times*, and *The Washington Post*, among others—as well as online platforms including YouTube—do not publish the name. Nevertheless, Mr. Atkinson asserts that Facebook's editorial decision gives rise to a bevy of claims—violations of the First Amendment, the Connecticut Unfair Trade Practices Act, the implied warranty of good faith and fair dealing, the Communications Decency Act ("CDA") (a statute that, notably, has *no* private right of action), and even a claim for fraud.

Mr. Atkinson's complaint falters for a host of reasons and the Court should dismiss it with prejudice.

- The Court should dismiss Mr. Atkinson's First Amendment claim because Facebook is not a state actor and, in any event, the First Amendment itself protects Facebook from Mr. Atkinson's claims.

- A federal statute—the Communications Decency Act (47 U.S.C. § 230(c)(1))—"bars 'lawsuits seeking to hold a[n Internet] service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'"  *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) (quoting *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 396, 407 (6th Cir. 2014)).

- **Beyond these federal immunities, Mr. Atkinson's claims fail as a matter of law.  His fraud cause of action fails because it does not allege a false statement as Connecticut law requires and because it does not meet Fed. R. Civ. P. 9(b)'s rigorous pleading standard.  His remaining state law claims constitute boilerplate recitals of the elements of his causes of action that fail to meet Fed. R. Civ. P. 8's basic pleading requirements.**

- **The Court must dismiss the claims against Mark Zuckerberg because Mr. Atkinson provides insufficient allegations demonstrating why the Court should hold Mr. Zuckerberg personally liable simply because he is a Facebook officer.**

If the Court does not dismiss the action, it should transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a) because Mr. Atkinson agreed to a binding forum selection clause governing all disputes between the parties.

## II.    BACKGROUND

### A.    Allegations in the Complaint

Mr. Atkinson is a third-year law student at Quinnipiac University School of Law in North Haven, Connecticut.  *See* Dkt. No. 1 at 2, ¶ 3.  Mr. Atkinson "regularly posts on Facebook about political and legal developments[.]"  *Id.* at 6, ¶ 20.  When he "learned from friends that Facebook was censoring conservatives' posts that mentioned the name" of the alleged whistleblower, he "decided to test the scope of Facebook's censorship himself."  *Id.* at 6, ¶ 22.  On November 11, 2019, Mr. Atkinson posted a series of statements surrounding the on-going Congressional investigation into the President's contacts with the Ukrainian government.  *Id.* at 6, ¶ 23.  Specifically, Mr. Atkinson made three statements regarding his opinion of the confidential whistleblower at the center of the investigation; one statement was positive, one negative, and one expressed conflicting emotions.  *Id.* at 5-6, ¶¶ 23-27.  Each statement included the purported

name of the whistleblower.  *Id.*  Facebook removed all three posts.  *Id.* at 6, ¶ 26; 28.

Disturbed at Facebook's "attempt to pander to and placate its critics," *id.* at 6, ¶ 30, Mr. Atkinson retained counsel and filed a seventy-five-paragraph complaint the next day.  The complaint asserts five causes of action: (1) a violation of the CDA; (2) a First Amendment violation; (3) fraud; (4) violations of the CUTPA; and (5) breach of the implied warranty of good faith and dealing. Each of these claims turns on Mr. Atkinson's belief that Facebook improperly deleted his posts because of their content.  For the following reasons, each claim fails.

### B.    Facebook's Forum Selection Clause

Mr. Atkinson registered for the Facebook platform on June 9, 2014.  *See* Declaration of Nicholas Wong in Support of Facebook, Inc.'s Motion (hereinafter "Wong Dec."), at ¶ 3.  As part of Facebook's user registration process in 2014, any person who wished to join Facebook was required to acknowledge that they had read and agreed to Facebook's Terms of Use ("Terms").  *Id.* at ¶ 4.  During the registration process, Facebook made the Terms available via a hyperlink.  *Id.* at ¶ 5.

Facebook's Terms, also referred to as the "Statement of Rights and Responsibilities," included a mandatory forum selection clause providing that parties must bring claims or disputes "arising out of or relat[ed] to . . . Facebook" "exclusively" in the federal or state courts located in Santa Mateo County, California.  *Id.* at Ex. A, § 16.1.

All user agreements in effect from June 9, 2014 through the present have also required that dispute resolution take place in the federal or state courts in California.  *See id.* at Ex. A-D.  Facebook has never had a user agreement that

permitted dispute resolution to take place in Connecticut courts.  Wong Dec. at ¶ 7.

## III.   THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims a plaintiff alleges in the complaint.  *Loginovskaya v. Batratchenko*, 764 F.3d 266, 269-70 (2d Cir. 2014).  A court may dismiss a complaint under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory.   *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *see also Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 153 (2d Cir. 2013) (noting that dismissal for failure to state a "legally cognizable claim" is "analogous" to a 12(b)(6) dismissal).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court may disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]"  *Iqbal*, 556 U.S. at 678.

### A.   The First Amendment shields Facebook against Mr. Atkinson's content-restriction-based claims.

#### 1.   Mr. Atkinson cannot use the First Amendment as a sword against Facebook.

In his second cause of action, Mr. Atkinson asserts that Facebook's restriction of his user-generated content violates the First Amendment.  Dkt. No. 1 at 10-11, ¶¶ 44-52.  Mr. Atkinson, however, cannot use the First Amendment as a sword against Facebook because Facebook is not a state actor.

As the United States Supreme Court affirmed this past June, "[t]he Free Speech Clause of the First Amendment constrains governmental actors and protects private actors."  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct.

1368543

1921, 1926 (2019); *see also Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("It is, of course, commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state.").  The Court explained in *Halleck* that a private entity can qualify as a state actor in a only a "few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function, (ii) when the government compels the private entity to take a particular action, or (iii) when the government acts jointly with the private entity."  *Halleck* at 1928 (internal citations omitted). The Complaint fails to engage with the framework articulated by the Supreme Court and instead asserts that Facebook should be treated as a state actor for entirely different reasons.

*First*, citing the Supreme Court's decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), Mr. Atkinson contends that the internet is a "public forum" and that Facebook "occupies a dominant, quasi-monopolistic position" within it. *Packingham*, however, addressed whether the state can restrict an individual's ability to access Facebook—not whether Facebook can restrict who or what appears on its platform.  Subsequent decisions have noted this distinction when finding the First Amendment does not apply to social media platforms like Facebook.  *See, e.g., Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40-41 (D.D.C. 2019); *Prager Univ. v. Google LLC*, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018).

*Second*, Mr. Atkinson asserts that Congress has made Facebook a trustee of the internet due to the protections it afforded internet platforms under § 230 of the CDA.  In Mr. Atkinson's view, this apparently transformed Facebook into a state actor under *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961).  No court has ever adopted this novel construction of the statute, and it finds no

support in the text of the CDA.  Moreover, *Burton* analyzed the Fourteenth Amendment (not the First Amendment) and is readily distinguishable on its facts. *Burton* involved a restaurant, leasing space in a publicly owned parking garage, that discriminated based on race.  *Id.* at 717-18.  The Supreme Court ruled that, in the specific facts and circumstances of that case, the private restaurant was subject to the Fourteenth Amendment as if it were the government itself.  *Id.*  Mr. Atkinson has not plausibly alleged that the protections the CDA affords amount to a governmental "lease" of the internet to companies like Facebook.  *See generally Young v. Facebook, Inc.*, 2010 WL 4269304, at*3 (N.D. Cal. Oct. 25, 2010) (distinguishing Facebook from the restaurant-lessee in *Burton*).

*Finally*, Mr. Atkinson asserts that Facebook has a "symbiotic relationship" with the government because it responds to subpoenas from law-enforcement agencies but not from subpoenas from private attorneys.  As an initial matter, this is simply not true and Mr. Atkinson's counsel has no Fed. R. Civ. P. 11 basis for making such an assertion in a federal court pleading.  But, more importantly, Mr. Atkinson fails to explain why Facebook's responsiveness to subpoenas renders his complaint viable.  The fact that Facebook responds to duly authorized subpoenas—whether they come from the government or a private party—does not transform Facebook into a state actor.  Indeed, if anything, it proves the opposite.  The fact the government must resort to compulsory process to secure documents from Facebook only underscores the fact Facebook is not simply an arm of the government.  Unsurprisingly, numerous courts have held that Facebook is *not* a state actor under the First Amendment and that it cannot be held liable for restricting another's speech.[1]

---

[1]  *See Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1309-1314 (N.D. Cal. 2019); *Fehrenback v. Zeldin*, 2018 WL 4242452, at *3 (E.D.N.Y. Aug. 6, 2018); *Nyabwa v. Facebook*, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26,

2. **Under the First Amendment, Mr. Atkinson cannot restrict the editorial decisions of a private actor.**

In addition, Mr. Atkinson's content-restriction claims are fatally flawed because they would violate Facebook's First Amendment rights under the U.S. Constitution.  The First Amendment protects "the decision of both what to say and what not to say."  *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797 (1988).  Mr. Atkinson cannot, consistent with the First Amendment, tell Facebook "what it must print."  *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 88 (1980).  This, however, is precisely what the Complaint purports to do.

Mr. Atkinson is asking the Court to punish Facebook for removing certain content from its platform or limiting what content users can post to its platform.  *See, e.g.*, Dkt. No. 1 at 10, ¶ 50.  But the First Amendment safeguards Facebook's "exercise of editorial control and judgment."  *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 575 (1995).  Just as the law cannot require a newspaper to publish op-ed columns, it cannot compel Facebook to host content on its platform that it chooses to reject.  *See Miami Herald Publ'g Co. v. Tornillo,* 418 U.S. 241, 258 (1974).

Courts have consistently held that these First Amendment protections extend to Internet platforms, including Facebook.  *See, e.g., Reno v. Am. Civil Libs. Union*, 521 U.S. 844 (1997) (First Amendment protections extend to the Internet); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017); *Zhang v. Baidu.com, Inc.,* 10 F. Supp. 3d 433 (S.D.N.Y. 2014); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629–30 (D. Del. 2007) (concluding that the First Amendment protects Google against attempts to force it to "place Plaintiff's ads

---

2018); *Shulman v. Facebook.com*, 2017 WL 5129885, at *4 (D.N.J. Nov. 6, 2017); *Forbes v. Facebook, Inc.*, 2016 WL 676396, at *2 (E.D.N.Y. Feb. 18, 2016); *Doe v. Cuomo*, 2013 WL 1213174, at *8 (N.D.N.Y. Feb. 25, 2013); *Young*, 2010 WL 4269304, at *2.

for his websites in prominent places on [its] search engine results"). Because the First Amendment squarely protects Facebook's decisions to remove content from its service, the Court must dismiss Mr. Atkinson's content-restriction claims.

**B.     The Communications Decency Act bars Mr. Atkinson's state law claims.**

In addition to asserting a federal constitutional claim, Mr. Atkinson asserts three state law claims for (1) common law fraud; (2) violation of the Connecticut Unfair Trade Practices Act; and (3) breach of the implied warranty of good faith and fair dealing. While not completely clear, it appears Mr. Atkinson also attempts to assert an affirmative claim under the Communications Decency Act ("CDA"). As Defendants explain below, the CDA bars all of the state law claims and the CDA itself creates no affirmative cause of action for Mr. Atkinson to assert.

**1.     The CDA bars Mr. Atkinson's state law claims.**

Congress enacted the CDA in 1996 to foster the development of the internet and to encourage free speech by shielding service providers from lawsuits arising out of user generated content. Under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA further provides, "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* §

230(e)(3).  The Second Circuit has held "that the text of Section 230(c)(1) should be construed broadly in favor of immunity."  *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019).

Within the Second Circuit, CDA immunity applies when three conditions are met:

> (1) [defendant] is a provider or user of an interactive computer service, as defined by § 230(f)(2); (2) the plaintiff's claims treat the defendant as the publisher or speaker of information; and (3) that information is provided by an information content provider, other than the defendant interactive computer service.

*Id.* at 64 (internal quotation marks and citations omitted).  All three conditions are met here.

*First*, Facebook is an interactive computer service as defined by the statute. *See, e.g., Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588 (S.D.N.Y. 2018) ("Courts . . . have had no trouble concluding that social networking sites like Facebook.com . . . are 'interactive computer services.'") (citing *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017)); *see also Dipp-Paz v. Facebook*, 2019 WL 3205842, at *3 (S.D.N.Y. July 12, 2019).

*Second*, Mr. Atkinson's state-law claims, which turn on Facebook's editorial decisions to remove certain posts from its platform, seek to treat Facebook as a quintessential publisher.  *See LeadClick Media,* 838 F.3d at 174–75 ("At its core, § 230 bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'") (quoting *Jones v. Dirty World Entm't Recordings LLC,* 755 F.3d 398, 407 (6th Cir. 2014)).  Here, Mr. Atkinson's

various state-law theories of liability all rely on the same fundamental act: Facebook's decision to remove his posts from the platform.  His fraud claim alleges that Facebook "censors the speech of millions of Americans including the Plaintiff, and decides to remove his posts[.]"  Dkt. No. 1 at 12, ¶ 63(c).  His CUTPA claim, pleaded in a single sentence, appears to suggest that Facebook advertises open communication but then removed Mr. Atkinson's posts.  *See id.* at 13, ¶ 66.  Mr. Atkinson's good-faith claim suggests that Facebook has "chang[ed] the terms and conditions of the contracts without notice to the plaintiffs [sic]," presumably by removing his posts.  *Id.* at 14, ¶ 70.  The gravamen of each claim is that Facebook made an editorial decision to remove his posts.  As Defendants explain above, the CDA precludes claims that seek to hold interactive computer services liable for this kind of conduct.

*Finally*, Mr. Atkinson's own complaint makes clear that the information (here, the deleted posts), came from Mr. Atkinson himself, not from Facebook.  *See* Dkt. No. 1 at 6.  With all three requirements met, the CDA precludes each of Mr. Atkinson's claims and the Court should dismiss them with prejudice.

The fact that Mr. Atkinson has asserted a bevy of claims under different headings makes no difference.  *See, e.g.*, *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016) ("The ultimate question, though, does not depend on the form of the asserted cause of action; rather, it depends on whether the cause of action necessarily requires that the defendant be treated as the publisher or speaker of content provided by another.") (collecting cases).  Courts around the country routinely dismiss claims sounding in fraud, contract, and

unfair competition that run afoul of the CDA.[2]

>    **2.    Mr. Atkinson's affirmative claim under the CDA fails as a matter of law.**

Mr. Atkinson also appears to assert an affirmative claim under the CDA. *See* Dkt. No. 1 at 8-9, ¶¶ 36-43.  He suggests that the Act somehow renders Facebook a custodian of a constructive public trust, liable for editorial decisions that breach the trust's undefined and amorphous standards governing third-party content.  *See id.*  This Court should reject Mr. Atkinson's novel theory.

*First*, nothing in the text of the CDA creates an affirmative cause of action. Not surprisingly, Mr. Atkinson provides no statutory citation for any affirmative cause of action either.

*Second*, no court has ever held that the CDA creates a constructive public trust, and this Court should not become the first to do so.  Nothing in the text of § 230 describes or even suggests the existence of such a trust.  The Act's silence on a matter of such sweeping significance demonstrates a lack of Congressional intent to burden interactive computer services with the obligation of public trusteeship.  *See, e.g., Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981) ("it is an elemental canon of statutory construction

---

[2] *See, e.g., Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at *4 (N.D. Cal. July 8, 2016) (fraud claims partially barred by CDA and implied covenant of good faith claims wholly barred); *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 939 (S.D. Cal. 2013) (state unfair trade practice claim barred by CDA); *Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, 2011 WL 900096, at *6 (D.N.J. Mar. 15, 2011) (breach of contract claim barred by CDA); *Holomaxx Tech. Corp. v. Microsoft Corp.*, 2011 WL 3740813, at *2-3 (N.D. Cal. Aug. 23, 2011) (computer fraud claim barred by CDA); *e360Inisght, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (unfair competition claim barred by CDA).

that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.") (quoting *Transamerica Mortg. Adv., Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979)).  What is more, § 230 *does* include both Congressional findings in subparagraph (a) and an official legislative policy statement in subparagraph (b).  Neither provision contemplates the kind of constructive public trust Mr. Atkinson proposes.  *See* 47 U.S.C. § 230(a)–(b). Simply stated, Mr. Atkinson's innovation finds no statutory or decisional support, and the Court should reject it.

> **C.**     **Mr. Atkinson's state law claims fail as a matter of law.**

Even if the CDA did not bar Mr. Atkinson's they would fail on their merits.

> **1.     Fraud claim**

With respect to Mr. Atkinson's fraud claim, careful reading of the Complaint reveals *no alleged false statement*.  Under Connecticut law, the essential elements of fraud are (1) a false representation of fact; (2) known to be untrue by the party making it; (3) made with the purpose of inducing another party to act; and (4) the other party did act upon the false statement to its injury.  *See Capp Indus., Inc. v. Schoenberg*, 932 A.2d 453, 464 (Conn. App. 2007).  Nowhere does Mr. Atkinson assert that Facebook materially misled him with respect to *anything*. The closest the complaint comes to asserting falsity is its allegation that Facebook "holds [itself] out to the world as [a] promoter of free expression while simultaneously engaging in selective censorship."  Dkt. No. 1 at 12, ¶ 63(a).  But, even assuming the truth of this allegation for present purposes, there is nothing false about promoting free expression on one hand and making unremarkable editorial decisions on the other.  This defect alone is fatal to his claim.

Even if it were not, the sparse factual allegations in Mr. Atkinson's fraud count do not approach the rigorous pleading requirements of Fed. R. Civ. P. 9(b), which require plaintiffs to allege "with particularity the circumstances constituting fraud or mistake." The Complaint does not adequately "specify the statements [Mr. Atkinson] contends were fraudulent," nor does it "state where and when the statements were made" or sufficiently "explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016). His boilerplate allegations, couched in vague descriptions of "censorship," do not provide Facebook with "fair notice of [Mr. Atkinson's] claim." *Id.*

### 2.     CUTPA claim and Good Faith and Fair Dealing claims

Mr. Atkinson's CUTPA and good-faith claims are even less developed. Each claim summarily incorporates the Complaint's conclusory factual recitals and then, without elaboration, states a violation without any further explanation. These allegations are archetypal "legal conclusions" that cannot support Mr. Atkinson's causes of action. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). From the face of the Complaint, it is impossible to discern what about Facebook's embrace of free speech constitutes an unfair or deceptive trade practice, for example. Likewise, the Complaint sheds little light on *how* Facebook has allegedly "administered the contracts in an entirely self-serving manner[.]" Dkt. No. 1 at 14, ¶ 70. Moreover, Mr. Atkinson does not explain how any purported violation of the CUTPA caused him to suffer "an ascertainable loss," which is a "threshold barrier" for a CUTPA claim. *Artie's Auto Body, Inc. v. Hartford Fire*

*Ins. Co.*, 287 Conn. 208, 217-18; 947 A.2d 320, 329-330 (Conn. 2008).  This lack of specificity violates Fed. R. Civ. P. 8, and the Court should dismiss Mr. Atkinson's claims on this basis as well.

> **D.    The Court should dismiss Mr. Zuckerberg from the case because the Complaint does not and cannot allege any basis for his personal liability.**

Although Mr. Atkinson took the serious step of naming Mr. Mark Zuckerberg as a defendant and seeks to hold him personally liable for the decisions Facebook, Inc. has made, the Complaint contains no basis for this charge.  The Complaint's allegations against Mr. Zuckerberg are perfunctory:

- **Paragraph 5 alleges Mr. Zuckerberg is the Chairman and CEO of Facebook and owns a controlling interest in the company's stock.**

- **Paragraph 35 asserts that Mr. Zuckerberg made a decision to "categorically censor the speech of . . . Mr. Atkinson."  This allegation, which is not supported by any factual allegations, is merely made upon "information and belief."  Mr. Atkinson does not bother to allege *why* he believes this or *what* information supports his claim.**

In the rest of his Complaint, Mr. Atkinson lumps both defendants together.[3]  Mr. Atkinson appears to have sued Mr. Zuckerberg solely because he is a Facebook officer.  A corporation, however, is distinct from its individual officers and shareholders.  *See, e.g.*, *McKay v. Longman*, 332 Conn. 394, 442; 211 A.3d 20, 53 (Conn. 2019) ("Generally, a corporation is a distinct legal entity and the stockholders are not personally liable for the acts and obligations of the

---

[3] Mr. Atkinson's failure to differentiate between Facebook and Mr. Zuckerberg constitutes "group pleading" tactics that violate Fed. R. Civ. P. 8(a)(2), which requires a complaint to provide defendants with "fair notice" of what the "claim [is] and the grounds upon which it rests."  "[I]t is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes" and that "Rule 8(a) is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it."  *Nesbeth v. N.Y.C. Mgmt. LLC*, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019).

corporation[.]") (quoting *Comm'r of Envtl. Prot. v. State Five Indus. Park, Inc.*, 37 A.3d 724, 732 (Conn. 2012)).  As the Complaint does not contain specific allegations demonstrating that Mr. Zuckerberg should be subject to personal liability for Facebook's decisions, the Court should dismiss all claims against Mr. Zuckerberg.

IV.    **IF THE COURT DOES NOT DISMISS THIS CASE, IT SHOULD TRANSFER IT TO THE NORTHERN DISTRICT OF CALIFORNIA**

If the Court does not dismiss Mr. Atkinson's Complaint, it should transfer this lawsuit to the Northern District of California because Mr. Atkinson is contractually bound to litigate his dispute in California.

A.    **Legal Standards**

28 U.S.C. § 1404(a) allows a district court to transfer a civil action to "any district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation."  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013) (citation omitted).  In *Atlantic Marine*, the United States Supreme Court held that when a court considers a motion to transfer and the parties' contract contains a valid forum selection clause, that clause "[should be] given *controlling weight* in all but the most exceptional cases."  *Id.* at 63 (emphasis added).

The Court also instructed that the standard Section 1404(a) analysis, in which courts "evaluate both the convenience of the parties and various public-interest considerations," does *not* apply to a motion to transfer based on a valid forum selection clause.  *Id.* at 62–63.  When such a clause is in play, Mr. Atkinson's choice of forum "merits no weight," and courts "should not consider arguments about the parties' private interests."  *Id.* at 63–64.  Moreover, "public-

interest factors" will rarely defeat a transfer motion, such that "[i]n all but the most unusual cases," "'the interest of justice' is served by holding parties to their bargain" and transferring the case to the forum designated in the parties' forum selection clause. *Id.* at 64–66.

This case is not one of those "most unusual cases." *Id.* at 66. Instead, it presents the standard situation in which transfer is appropriate. Facebook's forum selection clause is valid and mandatory, and Mr. Atkinson's claim falls within its scope. Thus, the Court should transfer it to the Northern District of California.

B.     Mr. Atkinson assented to Facebook's terms.

Mr. Atkinson agreed to be bound by Facebook's terms, including the forum selection clause. He admits that he and Facebook "entered into contracts," and he does not challenge the validity of that agreement anywhere in the complaint. Dkt. No. 1 at 13, ¶ 68. To the contrary, Mr. Atkinson relies on the validity of his contract with Facebook to support his claim for a breach of the implied warranty of good faith and fair dealing. *Id.*

Moreover, he, like all Facebook users, assented to the terms as a condition for registering his Facebook accounts and using the Facebook service. Wong Dec. ¶¶ 5-7. Courts that have considered this issue have routinely held that Facebook's users, like Mr. Atkinson, are bound by its terms of service. *See, e.g., Thomas v. Facebook, Inc.*, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) (enforcing Facebook's user agreement and transferring case); *In re Facebook Biometric Privacy Litig.*, 185 F. Supp. 3d 1155, 1163–67 (N.D. Cal. 2016) (Facebook's user registration process provides sufficient notice to create an enforceable contract); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838–41 (S.D.N.Y. 2012) (Facebook's user registration process formed an enforceable

contract with user); *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at

*7 n.20 (N.D. Cal. July 20, 2010) (defendant agreed to terms of service by

accessing or using Facebook).

> **C.    Facebook's forum selection clause covers all of Mr. Atkinson's claims.**

Facebook's forum selection clause is broad.  It applies to all "claims or

disputes "arising out of or relat[ed] to . . . Facebook[.]"  Wong Dec. at Ex. A,

§ 16.1.  Here, as the Complaint sets forth, Mr. Atkinson seeks to hold Facebook

liable for removing posts in violation of Facebook's Community Standards, which

are part of the Terms of Use.  Accordingly, his claims "arise out of or relate to"

the Terms of Use and  the mandatory forum selection clause requires their

transfer to California.

> **D.    Facebook's forum selection clause is valid and enforceable.**

Federal courts have routinely held that Facebook's forum selection clause

is valid.  *See Franklin v. Facebook, Inc.*, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24,

2015) ("The Court cannot identify a single instance where any federal court has

struck down Defendant's [terms of service] as an impermissible contract of

adhesion induced by fraud or overreaching or held the forum selection clause

now at issue to be otherwise unenforceable due to public policy

considerations.").

In determining whether Facebook's forum selection clause is valid and

enforceable, the Facebook terms of service specify the application of California

law.  *See* Wong Dec. at Ex. A, § 16.1.  This Court, however, need not decide

whether California law or Connecticut law applies.  Under either state's laws,

Facebook's forum selection clause is valid and enforceable.

California law strongly favors enforcing forum selection clauses.  "[F]orum selection clauses are given effect in [California] absent a showing that enforcement would be unfair or unreasonable."  *Furda v. Super. Ct.*, 161 Cal. App. 3d 418, 425 (Cal. Ct. App. 1984).  Indeed, "the existence of a contractual forum selection clause *requires* a court to decline jurisdiction . . . absent [such] a showing."  *Id.* at 424-425 (citations omitted) (emphasis added).

Connecticut law, too, favors enforcement of forum selection clauses.  A forum selection clause is *prima facie* valid and a party contesting it bears the burden of demonstrating that it should not be enforced.  *See U.S. Tr. Co. v. Bohart*, 197 Conn. 34, 42; 495 A.2d 1034, 1040 (Conn. 1985) ("Absent a showing of fraud or overreaching, such forum clauses will be enforced by the courts.")

Courts that have considered Facebook's forum selection clause have consistently held that it is valid and enforceable.[4]  Given the strong policies in Connecticut and California favoring the enforcement of forum selection clauses, this Court should likewise join the "great weight of persuasive authority" from other courts that has consistently found Facebook's forum selection clause to be valid and enforceable.  *Franklin*, 2015 WL 7755670, at *2.

    **E.**    **The Public Interest Favors Transferring This Lawsuit to The Northern District of California If It Is Not Dismissed**

---

[4] *See, e.g, Thomas*, 2018 WL 3915585, at *4 ("Numerous courts have affirmed the validity and enforceability of Facebook's SRR and the forum selection clause contained therein. Indeed, the Court is not aware of any case concluding that the forum selection clause in Facebook's SRR is invalid."  (citation omitted)); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1160 (D. Haw. 2018) ("[N]umerous courts have found Facebook's SRR, and forum selection clause to be valid. … This court agrees[.]"); *Franklin*, 2015 WL 7755670, at *2 (enforcing Facebook forum selection clause); *Fteja*, 841 F. Supp. 2d at 835 (same); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900-03 (S.D. Ill. 2012) (same); *Miller v. Facebook, Inc.*, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010) (same).

1368543

The Court should transfer this case unless Mr. Atkinson can show that the public-interest factors "overwhelmingly disfavor a transfer." *Atl. Marine Constr. Co*, 571 U.S. at 67. But Mr. Atkinson cannot clear this high hurdle.

In fact, the public maintains a strong interest in enforcing forum selection clauses to provide consistency and certainty for companies like Facebook. Courts have long recognized the "importance of enforcing choice[-]of[-] law provisions for businesses with nationwide customers to limit the risk and expenses of litigation under different laws in every state." *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010). That need for certainty is even more acute for Internet companies such as Facebook, because users can access web-based services nearly anywhere. One court has recognized that failing to enforce forum selection clauses would cause significant disruption for both Internet companies and their millions of users:

> [S]triking the forum selection clause could wreak havoc on the entire social-networking internet industry. If this court were to determine that the forum selection clause contained in Facebook's TOU [Terms of Use] was unenforceable, the company could face litigation in every state in this country and in nations around the globe which would have potential adverse consequences for the users of Facebook's social-networking site and for other internet companies.

*Miller v. Facebook, Inc.*, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010).

Courts around the country agree that the enforcement of forum selection clauses also benefits consumers by encouraging and protecting innovation. Indeed, denying Internet companies certainty on what laws will apply to them—or subjecting them to an unpredictable patchwork of potentially conflicting state regulations—could "chill free speech and the rapidly expanding field of Internet commerce." *Archdiocese of St. Louis v. Internet Entm't Grp., Inc.*, 1999 WL 66022, at *3 (E.D. Mo. Feb. 12, 1999). Worse, "inconsistent regulatory schemes

could paralyze the development of the Internet altogether." *Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997).

Moreover, enforcement of the forum selection clause would not be unreasonable or unjust here.  The parties' agreement to select California as a forum has a rational basis: Facebook has its principal place of business there.  And California courts are fully able to accomplish justice in this matter.  It is thus in the public's interest to enforce Facebook's forum selection clause.  *See Atl. Marine Constr. Co.,* 571 U.S. at 65.  If the Court determines not to dismiss this case outright, it should transfer this matter to the United States District Court for the Northern District of California.

V.     CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint with prejudice, or in the alternative, transfer this case to the Northern District of California.

THE DEFENDANTS, FACEBOOK, INC. AND MARK ZUCKERBERG


By:     /s/ Gary S. Klein
         Gary S. Klein (ct09827)
         Carmody Torrance Sandak & Hennessey LLP
         707 Summer Street, 3rd Floor
         Stamford, CT 06901-1026
         Tel:  (203) 252-2696
         Fax: (203) 325-8608
         gklein@carmodylaw.com
         Their Attorneys

1368543

**Paven Malhotra (Pending Admission Pro Hac Vice)**
**pmahlotra@keker.com**
**Nicholas Green (Pending Admission Pro Hac Vice)**
**ngreen@keker.com**
**Keker, Van Nest & Peters, LLP**
**633 Battery Street**
**San Francisco, CA 94111**
**Tel: (415) 391-5400**
**Fax: (415) 397-7188**
**Their Attorneys**

1368543

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2020 I filed a copy of the foregoing electronically and served a copy of the foregoing by mail on anyone unable to accept electronic filing.  The Court's electronic filing system will send notice of this filing by e-mail to all parties.  Parties may access this filing through the court's CM/ECF System.


<u>/s/ Gary S. Klein</u>
**Gary S. Klein**