# Exhibit A

**UNITED STATED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CAMERON L. ATKINSON, | : | |
| | : | |
| Plaintiff, | : | 3:19-CV-01785-JCH |
| | : | |
| v. | : | |
| | : | |
| FACEBOOK, INC., | : | |
| MARK ZUCKERBERG, | : | |
| Defendants. | : | April 27, 2020 |

## SUPPLEMENTAL COMPLAINT

1. This is an action for money damages and injunctive relief against Facebook, a social media company and personal data harvester, and its founder and current chief executive officer, Mark Zuckerberg. The defendants seek to, and do, have quasi-monopolistic control of a quintessential public communications forum, offering users access to their service free of charge while surreptitiously selling data gathered from the users to third parties for a profit. The defendants enter into adhesion contracts with users, arrogating unto the defendants an opaque right to ban any user for violating the defendants' so-called "community standards." The Plaintiff has been denied the ability to speak publicly on a matter of grave public importance based on the perceived content of the ideas he sought to express. The Plaintiff claims a violation of his rights under the First Amendment to the United States Constitution, violations of the Communications Decency Act, a breach of the implied warranty of fair dealing, and violations of the Connecticut Unfair Trade Practices Act (CUPTA).

2. The instant document is a supplemental complaint pursuant to Fed. R. Civ. P. 15(d). As such, it hereby incorporates the entirety of the original complaint in this action herein.

**Jurisdiction**

3. The Court properly possesses jurisdiction on both federal question and diversity of citizenship grounds. Venue is appropriate as a substantial part of the events that give rise to the claim occurred in the judicial district of Connecticut. The Claim arises under 42 Section 1983 and 47 U.S.C Section 230.

**Parties**

4. The Plaintiff, Cameron L. Atkinson, is an adult resident of New Haven County, Connecticut. At the time of this action being brought, he is a third-year law student at Quinnipiac University School of Law, located in North Haven, Connecticut.

5. Facebook, Inc., is a social media company headquartered in Menlo Park, California. It operates a social media company serving more than 2.3 billion users worldwide.

6. Mark Zuckerberg is the Chairman and Chief Executive Officer of Facebook, Inc., owning a controlling interest in the company's stock. He resides in Palo Alto, California.

**Facebook Continues to Censor Cameron L. Atkinson**

7. Like many of his fellow citizens and students of the law, the Plaintiff, Cameron L. Atkinson is deeply concerned about the ongoing measures to combat coronavirus. He regularly discusses them with like-minded individuals, and he regularly posts his thoughts on the measures on social media platforms including Facebook.

8. Mr. Atkinson holds a sincere opinion that the current government measures to combat coronavirus are blatantly unconstitutional and have resulted in a dangerous

suspension of constitutional liberties for all Americans. He has repeatedly expressed this opinion on social media platforms including Facebook.

9. Mr. Atkinson also believes that the censorship of protests and other speech advocating against the current coronavirus measures pose an even greater threat to constitutional liberties.

10. On the morning of April 20, 2020, Mr. Atkinson engaged in his daily perusal of the news, and he noticed that, according to CNN, Facebook's spokesperson had issued a statement that Facebook was consulting with state officials and governments as to which posts were organizing protests against "stay-at-home" orders and promoting "illegal" behavior. *See* **Exhibit A To Complaint.**

11. Facebook also confirmed that it was taking down any posts coordinating protests in California, New Jersey, and Nebraska. *See* **Exhibit A To Complaint.** Facebook also confirmed that it is actively working with state and local governments to determine which posts to censor. *Id*.

12. After reading the CNN story, Mr. Atkinson penned and published a blog post for his personal website, www.cameronlatkinson.com, entitled "I Sued Facebook For Coordinating Speech Censorship With Governments. Today, They Admitted It."

13. Pursuant to his custom, Mr. Atkinson shared his blog post to LinkedIn, Twitter, and Facebook. LinkedIn and Twitter both published his posts without a problem.

14. Facebook, however, did not publish Mr. Atkinson's post.

15. Thinking that a technical error, either in a faulty internet connection or some other technical problem, Mr. Atkinson attempted to reshare his blog post to Facebook no

less than seven times and he checked his Facebook timeline after each attempt where he should have been able to see his post.

16. Even though on several of his attempts Mr. Atkinson received a confirmation screen saying that his post had been successfully shared, none of his attempts to share his blog post were posted to his Facebook page.

17. Upon information and belief, the Defendants censored Mr. Atkinson's post in a completely arbitrary manner.

18. Mr. Atkinson had previously shared posts regarding the instant action on Facebook without being censored.

19. There is no indication that the Defendants, through their algorithms or by a person, actually viewed Mr. Atkinson's article.

20. There is no indication that the Defendants made any good faith attempt to review whether Mr. Atkinson's post complied with their opaque community standards.

21. Instead, the Defendants immediately blocked Mr. Atkinson's post solely based on its title, which stated his opinion based on their own words that they were deliberately cooperating with governments to censor speech on Facebook.

22. Mr. Atkinson had previously shared posts regarding the instant action on Facebook without being censored.

23. The Defendants censored Mr. Atkinson's post simply because they had made a public relations blunder, and indeed a business blunder, of epic proportions and they were seeking to control self-inflicted damages without even making a fair assessment of Mr. Atkinson's speech to determine whether they had a good faith basis for censoring it.

**Communications Decency Act**

24. Paragraphs 1 through 23 are incorporated by reference herein.

25. Facebook is a provider of an "interactive computer service" within the meaning of the Communications Decency Act (CDA) of 1996, 47 U.S.C. Section 230, et seq.

26. The Communications Decency Act provides immunity from civil liability for materials published on interactive computer service sites. The provision of immunity was intended to avoid "content-based" chilling of freedom of speech in the "new and burgeoning Internet medium." Section 230 was enacted, in part, to preserve the robust nature of speech on the Internet. These principles were clearly articulated in *Zeran v. America Online*, Inc., 129 F.3d 327 (4th Cir. 1997), cert. denied, 524 U.S. 937 (1998).

27. Facebook enjoys immunity from suit under Section 230 of the CDA as a Congressionally mandated means of ensuring free and robust speech on the Internet. This privileged status necessarily entails a corresponding responsibility to achieve the very goal for which Congress granted the immunity: to wit, the preservation of free speech on a quintessential public forum.

28. Facebook's enjoyment of immunity from civil liability for the material it transmits on the Internet transforms its editorial decision-making process into management of a constructive public trust.

29. The activities of this constructive public trust require that Facebook operate and manage its content-based decisions in accord with the purposes of the trust.

30. The manner and means by which the defendants have banned the Plaintiff from engaging in free speech on Facebook are a violation of the CDA and constitute a willful and wanton violation of the terms of the constructive public trust.

31. The defendants use and enjoyment of the immunity conferred by the CDA while simultaneously flouting the very purposes for which Congress conferred immunity is unconscionable and is akin to their secret harvesting of user date for sale at a profit to third parties.

### First Amendment

32. Paragraphs 1 through 31 are incorporated by reference herein. This claim arises under 42 U.S.C. Section 1983.

33. Facebook's dominant position in control of access to the Internet gives it a quasi-monopolistic power over a quintessential public forum.

34. Facebook actively seeks to expand the reach of this quasi-monopolistic power and hires teams of social psychologists to study how users interact with site, constructing complex algorithms and engaging in sophisticated behavioral modeling so as to maximize the amount of time each user spends on the site.

35. By increasing the amount of time users spend on the site, Facebook acquires more data, and is better able to predict how users will behave in response to stimuli. This data and the associated predictive models are at the core of the Facebook's business plan and are the primary product Facebook sells to advertisers.

36. The CDA's grant of immunity is integral to the government's purpose of promoting freedom of speech on the Internet. As such, the symbiosis between Facebook

and the United States government transforms Facebook's action into state action under the doctrine enunciated in *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961).

37. Facebook's symbiotic relationship with state governments has resulted in the censorship of constitutionally protected speech designed to facilitate constitutionally protected protests.

38. Facebook's decision to conduct the aforementioned censorship was done in direct coordination and cooperation with state governments.

39. The defendants' decision to censor Mr. Atkinson's blog post – which called out their shady activities with governments – was made for the sole, or at least partial, purpose of concealing an impermissible alliance to censor speech between government and one of the world's biggest corporations.

40. Consequently, the defendants' decision to censor Mr. Atkinson's blog post violated the First Amendment.

## Connecticut Unfair Trade Practices Act

41. Paragraphs 1 through 40 are incorporated by reference herein.

42. The Defendants' act of holding themselves out to the world as fostering a means by which the people of the world can communicate with one another freely without censorship constitutes an unfair or deceptive act or practice under the Connecticut Unfair Trade Practices Act.

## Implied Warranty of Good Faith and Fair Dealing

43. Paragraphs 1 through 66 are incorporated by reference herein.

44. Facebook and the Plaintiff entered into contracts about the terms and conditions under which the Plaintiff would use Facebook's social media services.

45. The Plaintiff honored the terms and conditions of the contracts.

46. The Defendants have administered the contracts in an entirely self-serving manner, by changing the terms and conditions of the contracts without notice to the plaintiffs, and by otherwise behaving in an unconscionable manner for purposes of enormous financial gain and to conceal their shady dealings with governments to censor speech.

## Damages

47. Facebook and Mr. Zuckerberg are contemptuous of public oversight of any kind, and regard substantial fines as a simple cost of doing business.

48. In April 2019, Facebook set aside a sum of $5 billion to use to pay an anticipated fine by the Federal Trade Commission involving systemic breaches of consumer privacy. Even so, the Defendants forecast significant profits.

49. The Defendants face investigations for breaches of privacy and other regulatory offenses in the European Union under GDPR laws.

50. Punitive damages in a sum sufficient to make Facebook accountable are necessary.

Wherefore, the Plaintiff seeks damages as follows:

A. Punitive damages in a sum sufficient to punish and deter Facebook for violating the First Amendment, the Communications Decency Act, for engaging in unfair or deceptive trade practices, and breaching the implied warranty of fair dealing. Because a sum of $5 billion appears to be insufficient to deter Facebook, the plaintiffs ask the jury for a sum significantly in excess of that amount;

B. Attorneys' fees and the cost of this action arising under 42 U.S.C. Section 1988 and Connecticut law;

C. Compensatory damages for violating the Plaintiff's First Amendment rights to free speech;

**DEMAND FOR JURY TRIAL**

The Plaintiff respectfully requests a trial by a jury.

THE PLAINTIFF

By: /s/ NORMAN A. PATTIS /s/
    NORMAN A. PATTIS
    PATTIS & SMITH, LLC
    383 Orange Street
    New Haven, CT 06511
    203.393.3017
    203.393.9745
    npattis@pattislaw.com
    ct13120

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2020, I filed a copy of the foregoing electronically and served a copy of the foregoing by mail on anyone unable to accept electronic filing. The Court's electronic filing system will send notice of this filing by e-mail to all parties. Parties may access this filing through the Court's CM/ECF System.

/s/ NORMAN A. PATTIS /s/
NORMAN A. PATTIS

# EXHIBIT A TO SUPPLEMENTAL COMPLAINT

# Facebook will take down some, but not all, posts promoting anti-stay-at-home protests

By Donie O'Sullivan and Brian Fung, CNN

Updated 1:54 PM ET, Mon April 20, 2020

   

**Whitmer: Stay-at-home protests look like political rally** 03:24

**(CNN)** — Facebook will remove some posts on anti-stay-at-home protests being organized in California, New Jersey and Nebraska after consulting with officials in those states, a company spokesperson told CNN Monday.

The protests run afoul of the states' social distancing guidelines, Facebook spokesman Andy Stone said.

Protests have erupted around the US in recent days as shutdown orders have been extended, just as record numbers of Americans lose their jobs.

Facebook has come under fire as groups organizing anti-stay-at-home protests have popped up all over the platform. Stone said Facebook would take down posts created through the Facebook Events feature that promote events in California, New Jersey and Nebraska. Other Facebook posts, including Facebook groups about the protests, might not be removed.

Alyana Alfaro Post, a spokesperson for New Jersey Gov. Phil Murphy, told CNN that the governor's office and Facebook had been communicating about the issue but said, "The governor's office did not ask Facebook to remove pages or posts for events promoting lifting the provisions of the governor's stay-at-home order."

One event, which is being promoted on the platform, is due to take place in Harrisburg, Pennsylvania, on Monday.

A Facebook group for Pennsylvanians against "excessive quarantine" that was set up last week already had more than 66,000 members by Monday morning.

Nebraska's government was not aware of any specific anti-stay-at-home events and did not request that Facebook remove event pages, according to Taylor Gage, a spokesman for Gov. Pete Ricketts.

"Facebook reached out last week to learn more about Nebraska's social distancing restrictions, and the governor's staff provided already publicly available information about Nebraska's 10-person limit and directed health measures," Gage said in a statement to CNN.

Stone said Facebook is working to get answers from state governments in Wisconsin, Ohio, Pennsylvania and New York as to whether anti-stay-at-home protests are also prohibited under their social distancing guidelines.

"Unless government prohibits the event during this time, we allow it to be organized on Facebook," Stone said. "For this same reason, events that defy government's guidance on social distancing aren't allowed on Facebook."

Search CNN...

CNN politics    LIVE TV

World

Politics

Business

Opinion

Health

Entertainment

Tech

Style

Travel

Sports

Videos

Coupons

More



FOLLOW CNN POLITICS

  

Terms of Use    Privacy Policy    Do Not Sell My Personal Information    AdChoices    About Us    CNN Studio Tours

CNN Store    Newsletters    Transcripts    License Footage    CNN Newsource    Sitemap

© 2020 Cable News Network.  Turner Broadcasting System, Inc.  All Rights Reserved.
CNN Sans ™ & © 2016 Cable News Network.



 LIVE TV